UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.   24cr10189 |
| v. | Violations: |
| (1) MANPREET KOHLI,<br>  a/k/a/ "Mkay Saitama" or "mannythehitman", | Count One:<br>Conspiracy to Commit Market Manipulation,<br>Conduct an Unlicensed Money Transmitting<br>Business, and Commit Wire Fraud<br>(18 U.S.C. § 371) |
| (2) NAM TRAN,<br>  a/k/a "Ntran1234", and | |
| (3) HAROON MOHSINI,<br>  a/k/a "AaronSaitama" or "Elonmansur", | Counts Two – Four:<br>Market Manipulation<br>(15 U.S.C. §§ 78i(a)(2) and 78ff(a)) |
| Defendants | Counts Five – Seven:<br>Wire Fraud<br>(18 U.S.C. § 1343) |
| | Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |
| | Unlicensed Money Transmitting<br>Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.      Defendant MANPREET SINGH KOHLI ("KOHLI"), also known as "Mkay Saitama" or "mannythehitman", was a resident of the United Kingdom.

2.      Defendant NAM TRAN ("TRAN"), also known as "Ntran1234", was a resident of Washington State.

3.    Defendant HAROON MOHSINI ("MOHSINI"), also known as "AaronSaitama" or "Elonmansur", was a resident of Texas.

4.    Russell Armand ("Armand"), also known as "Saitamaguru1", was a resident of Texas.

5.    Maxwell Hernandez ("Hernandez"), also known as "MaxEquation", was a resident of Massachusetts.

6.    Co-conspirator 1 ("CC 1") was a resident of California.

7.    Saitama LLC ("Saitama") was a cryptocurrency company that was incorporated in Massachusetts on or about August 24, 2021.

8.    Saitama promoted a cryptocurrency token that operated on the Ethereum blockchain (the "Saitama Token").   Saitama purported to create multiple products that could be used with the Saitama Token, including the SaitaMask cryptocurrency exchange, the SaitaMaker non-fungible token ("NFT") platform, the SaitaRealty real estate investment platform and the SaitaRealty cryptocurrency token, and SaitaMarket, among others.   The Saitama Token was a security that at its peak had a market capitalization of $7.5 billion.

9.    KOHLI, TRAN, MOHSINI, Armand, and Hernandez were all leaders of the Saitama business and were featured as such on the company's website.

10.    Company 1 and Company 2 were companies that operated both inside and outside the United States and purported to offer "market making" services for cryptocurrencies, such as the active monitoring of cryptocurrency trading and price fluctuations, trading in the cryptocurrency to capitalize on price fluctuations, and related consulting services.

2

Background

11.     Virtual currency is a digital asset or digital representation of value that can be electronically traded and exchanged online.    Virtual currency is not backed or insured by a central bank and its value may or may not be tied to or secured by a fixed asset.    Cryptocurrency is a subset of virtual currency that utilizes blockchain technology.

12.     Title 31, United States Code, Section 5330, provides that "[a]ny person who owns or controls a money transmitting business shall register the business" with "the Secretary of the Treasury."    In certain instances, a cryptocurrency exchange—which is an electronic forum that facilitates the purchase, sale, and exchange of cryptocurrencies—constitutes a "money transmitting business."

Overview of the Conspiracy and the Scheme to Defraud

13.     Beginning in or about June 2021 and continuing through at least in or about 2022, KOHLI, TRAN, MOHSINI, Armand, Hernandez, and CC1, conspired with others known and unknown to the Grand Jury to artificially inflate the price of Saitama Tokens through manipulative trading, false and misleading statements, and the operation of an unlicensed cryptocurrency exchange, and to profit by selling Saitama Tokens.

Objects and Purpose of the Conspiracy and the Scheme to Defraud

14.     The objects of the conspiracy and of the scheme to defraud were (1) to commit market manipulation, (2) to conduct an unlicensed money transmitting business, and (3) to commit wire fraud.    The principal purpose of the conspiracy and of the scheme to defraud was for the conspirators to enrich themselves through the sale of Saitama Tokens.

<u>Manner and Means of the Conspiracy and the Scheme to Defraud</u>

15.    Among the manner and means by which KOHLI, TRAN, MOHSINI, Armand, Hernandez, CC 1, and others known and unknown to the Grand Jury carried out the conspiracy and scheme to defraud were the following:

a.    Engaging in manipulative trading of Saitama Tokens to create actual or apparent trading volume, thereby inducing others to trade Saitama Tokens, and inflate the price of Saitama Tokens;

b.    Soliciting investors to buy Saitama Tokens through the Saitama website as well as through online marketing and messaging applications such as Telegram, Twitter, Instagram, and YouTube;

c.    Making and causing to be made materially false and misleading statements about Saitama, its products, and its financing;

d.    Creating and operating an unlicensed money transmitting business that allowed users to buy and sell Saitama Tokens and other cryptocurrencies;

e.    Selling Saitama Tokens for a profit, often while publicly denying that they were doing so; and

f.    Moving Saitama's operations offshore to avoid disruption of the scheme by regulators and law enforcement authorities in the United States.

16.    In this form or fashion, KOHLI, TRAN, MOHSINI, Armand and Hernandez generated millions of dollars in proceeds.

<u>Overt Acts in Furtherance of the Conspiracy and the Scheme to Defraud</u>

17.     On or about various dates between in or about June 2021 and in or about 2022, KOHLI, TRAN, MOHSINI, Armand, Hernandez, CC 1, together with others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy and the scheme to defraud.

*Market Manipulation*

18.     KOHLI, TRAN, MOHSINI, Armand, Hernandez, and CC 1, coordinated a series of manipulative trades in Saitama Tokens, including through messages exchanged in a private Telegram chatroom named "Detective Saitama".

19.     For example, on or about July 3, 2021, at the following approximate times, the conspirators exchanged the following messages, among others:

  a.   At 1:47 p.m., Armand proposed creating a "TG [Telegram] shill group. Some bots some ppl but a lot of ppl will join".

  b.   At 1:48 p.m., Armand messaged, "We will create an illusion of massive buys and new holders as [Telegram] gets flooded" and "It'll incite ppl to buy more", to which MOHSINI replied, "Yep".

  c.   At 1:49 p.m., Armand messaged, "Basically creating our own pump through illusion and getting a few wallets out in the process".

  d.   At 2:07 p.m., KOHLI messaged, "I'm ready", and TRAN messaged, "Ready", to which MOHSINI responded by sending the following image:



e.  At 2:13 p.m., Armand messaged, "2-3T per transaction not big chunks. W[e] want list of small buys to look like it's mor[e] buyers. That's the idea".

f.  At 2:14 p.m., KOHLI sent the following image reflecting a proposed purchase of Saitama Tokens:



g.  At 2:14 p.m., after sending the above image, KOHLI messaged, "U mean like this type of buying?" to which Armand responded, "Yea mix it up between 1– 4 trillion", and KOHLI responded, "Got it".

6

h.  At 2:22 p.m., Armand messaged, "OK watch [Telegram] now", to which TRAN responded, "Okay ready", KHOLI responded, "Okay", Hernandez responded, "ok", MOHSINI responded, "Ok", and CC 1 responded, "ok".

i.  At 2:24 p.m., TRAN messaged, "Gooo" and Armand messaged, "Small buys", to which TRAN responded, "Did it", KOHLI responded, "Done", and Hernandez responded, "same".

j.  At 2:27 p.m., Armand messaged, "Is like fishing with dynamite", to which TRAN responded, "Lol", "Yea", and "It's actually fun".

k.  At 2:29 p.m., TRAN messaged, "Round 2 start now!", to which Hernandez responded, "bought a few times", and KOHLI responded, "Done second" and "Buying".

g.  At 3:01 p.m., Armand messaged, "Keep small buys coming have done 4-5 I think so far" and "Just small steady buys".

h.  At 4:19 p.m., Armand messaged, "If nothing else we did create hype and added holders", and later messaged, "Holders are increasing nicely and distribution is looking much better", "We will just have to coordinate our buys closely", and "the idea is to keep the chart trending upward to generate traction and stability. Will keep ppl from wanting to sell and will instead buy more".

20.  On or about July 4, 2021, at 2:30 p.m., Armand messaged, "Ladies and gentlemen that is how you start a hype. Perfectly executed well done all. Still have to keep small buys incoming [. . . .] Lots of ppl watching chart right now". TRAN later responded with the following image:



21.     Thereafter, beginning in or about August 2021 and continuing through at least 2022, KOHLI, TRAN, MOHSINI, and Armand caused further manipulative trades in the Saitama Token, including by paying Company 1 and Company 2 to buy Saitama Tokens on multiple cryptocurrency exchanges, thereby artificially inflating the apparent trading volume of Saitama Tokens.

*False and Misleading Statements*

22.     KOHLI, TRAN, MOHSINI, Armand, and Hernandez and others known and unknown to the Grand Jury made false and misleading statements to induce investors to purchase Saitama Tokens and donate money to Saitama.

23.     For example, beginning in or about June 2021, KOHLI, TRAN, MOHSINI, Armand, and Hernandez solicited donations from Saitama Token holders, claiming the funds would be used to pay for expenses related to operating the Saitama business.

24.     KOHLI, TRAN, MOHSINI, Armand, and Hernandez thereafter used a portion of the donated funds for other purposes, including to purchase more Saitama Tokens, thereby bolstering the price of the security.

25.    Beginning in or about July 2021, KOHLI, TRAN, MOHSINI, Armand, and Hernandez manipulated DEXTools, a publicly available cryptocurrency research tool, so that Saitama Tokens would be artificially ranked higher than other cryptocurrencies on the DEXTools website.    To facilitate the manipulation, the conspirators used multiple cryptocurrency wallets, web-browsers, and virtual private networks to continuously access the DEXTools webpage and choose Saitama as a "favorite."

26.    KOHLI, TRAN, MOHSINI, Armand, and Hernandez thereafter promoted Saitama on Twitter by referencing Saitama's rating on DEXTools.

27.    Beginning in or about September 2021, KOHLI, TRAN, MOHSINI, Armand, and Hernandez promoted Saitama through its website, which contained materially false and misleading statements.

       a.    For example, Saitama's website published the Saitama "whitepaper", an informational document describing Saitama's mission and business plan, which falsely advertised that the "whitepaper" had "been reviewed by regulators".    In fact, the whitepaper had not been reviewed by regulators.

       b.    As another example, Saitama's website falsely advertised that the Saitama Token was "coded in a way that prevents big wallet holders (whales) from trying to manipulate the price in their favour or from dumping the token by selling out."    In fact, there was no coding that prevented manipulation or large-scale sales of the Saitama Token.

28.    Beginning in or about September 2021, the conspirators also falsely claimed that they were buying Saitama Tokens and not selling their Saitama Tokens.

    a. For example, Armand falsely claimed in interviews on YouTube and in Twitter posts that he had not sold any Saitama Tokens.

    b. Likewise, TRAN falsely posted on Twitter "I am buying more", "I said HOLD", and "HODL and you will never regret".

    c. In fact, TRAN and Armand profited by selling a substantial number of the Saitama Tokens that they controlled at or about the same time they claimed otherwise.

*Creation and Operation of an Unlicensed Money Transmitting Business*

29.    KOHLI, TRAN, MOHSINI, Armand, and Hernandez promoted a cryptocurrency exchange on the Saitama website as well as on various social media platforms, including YouTube and Twitter, and conducted the exchange as a money transmitting business without complying with the registration requirements of Title 31, United States Code, Section 5330, and regulations prescribed thereunder.

30.    For example, starting in or about August 2021, the Saitama website advertised that Saitama had created a cryptocurrency exchange that would be "a one stop shop where you can connect your payment system of choice and be able to buy, sell, swap, transfer and do whatever you need with any coin."

31.    On or about January 18, 2022, the Saitama website advertised that the cryptocurrency exchange was available to the public, and beginning on or about that same date, the cryptocurrency exchange allowed users to exchange Saitama Tokens with other cryptocurrencies.

*Efforts to Avoid U.S. Regulators and Law Enforcement*

32.     KOHLI, TRAN, MOHSINI, Armand, and Hernandez took steps to avoid the legal consequences of their actions by hiding the proceeds of their sales of Saitama Tokens and relocating their operations overseas.

33.     For example, KOHLI, TRAN, MOHSINI, Armand, and Hernandez did not report the proceeds from this scheme to the Internal Revenue Service.

34.     As another example, on or about February 14, 2022, KOHLI, TRAN, MOHSINI, Armand, and Hernandez discussed moving Saitama's operations outside the United States in a private Telegram chatroom named "Saitama Dev Team".    KOHLI stated that "US is easiest to get in trouble lol" and that moving forward Saitama needed to "avoid US".

35.     On or about April 8, 2022, ARMAND sent a WhatsApp message to Hernandez stating that because of "potential lawsuits that will follow if this goes sideways" Armand "[w]ill have to relocate to another country", to which Hernandez responded, "[t]hat is putting it lightly".

36.     On or about April 20, 2022, Hernandez sent a WhatsApp message to Armand stating that he was considering removing himself from the Saitama leadership to avoid being part of Saitama "when the sec [Securities & Exchange Commission] shows up".

37.     On or about July 1, 2022, after Saitama filed a Notice of Cancellation of its incorporation with the Massachusetts Secretary of State, Saitama announced via Twitter that it would "migrate operations to Dubai, UAE".

<u>COUNT ONE</u>
Conspiracy To Commit Market Manipulation, To Conduct an Unlicensed Money
Transmission Business, and To Commit Wire Fraud
(18 U.S.C. § 371)

The Grand Jury charges:

38.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37

of this Indictment.

39.     From at least in or about June 2021 to at least in or about 2022, in the District of

Massachusetts and elsewhere, the defendants,

> (1) MANPREET KOHLI, a/k/a/ "Mkay Saitama" or "mannythehitman",
> (2) NAM TRAN, a/k/a "Ntran1234",
> (3) HAROON MOHSINI, a/k/a "AaronSaitama" or "Elonmansur",

conspired with Russell Armand, a/k/a "Saitamaguru1", Maxwell Hernandez, a/k/a

"MaxEquation", CC 1, and others known and unknown to the Grand Jury to:

a.  commit market manipulation, that is, knowingly and willfully, by the use of the mails

and any means and instrumentality of interstate commerce, directly and indirectly to

effect a series of transactions in a security not registered on a national exchange, to wit,

the Saitama Token, creating actual and apparent active trading in such security, and

raising and depressing the price of such security, for the purpose of inducing the

purchase and sale of such security by others, in violation of Title 15, United States

Code, Sections 78i(a)(2) and 78ff(a).

b.  conduct an unlicensed money transmitting business, that is, knowingly to conduct,

control, manage, supervise, direct, and own all and part of business, knowing the

business is an unlicensed money transmitting business affecting interstate and foreign

commerce, that failed to comply with the registration requirements under Title 31,

United States Code, Section 5330 and regulations prescribed thereunder, in violation of Title 18, United States Code, Section 1960(a) and (b)(1)(B).

c. commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, to transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO
Market Manipulation
(15 U.S.C. §§ 78i(a)(2) and 78ff(a))

The Grand Jury charges:

40.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37 of this Indictment.

41.     On or about July 3, 2021, in the District of Massachusetts and elsewhere, the defendant,

(1) MANPREET KOHLI, a/k/a/ "Mkay Saitama" or "mannythehitman",

did knowingly and willfully, by the use of the mails and any means and instrumentality of interstate commerce, directly and indirectly effect a series of transactions in a security not registered on a national exchange, to wit, the Saitama Token, creating actual and apparent active trading in such security, and raising and depressing the price of such security, for the purpose of inducing the purchase and sale of such security by others.

All in violation of Title 15, United States Code, Sections 78i(a)(2) and 78ff(a).

## COUNT THREE
Market Manipulation
(15 U.S.C. §§ 78i(a)(2) and 78ff(a))

The Grand Jury charges:

42.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37 of this Indictment.

43.    On or about July 3, 2021, in the District of Massachusetts and elsewhere, the defendant,

(2) NAM TRAN, a/k/a "Ntran1234"

did knowingly and willfully, by the use of the mails and any means and instrumentality of interstate commerce, directly and indirectly effect a series of transactions in a security not registered on a national exchange, to wit, the Saitama Token, creating actual and apparent active trading in such security, and raising and depressing the price of such security, for the purpose of inducing the purchase and sale of such security by others.

All in violation of Title 15, United States Code, Sections 78i(a)(2) and 78ff(a).

<u>COUNT FOUR</u>
Market Manipulation
(15 U.S.C. §§ 78i(a)(2) and 78ff(a))

The Grand Jury charges:

44.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37 of this Indictment.

45.     On or about July 3, 2021, in the District of Massachusetts and elsewhere, the defendant,

(3) HAROON MOHSINI, a/k/a "AaronSaitama" or "Elonmansur",

did knowingly and willfully, by the use of the mails and any means and instrumentality of interstate commerce, directly and indirectly effect a series of transactions in a security not registered on a national exchange, to wit, the Saitama Token, creating actual and apparent active trading in such security, and raising and depressing the price of such security, for the purpose of inducing the purchase and sale of such security by others.

All in violation of Title 15, United States Code, Sections 78i(a)(2) and 78ff(a).

COUNTS FIVE – SEVEN
Wire Fraud
(18 U.S.C. § 1343)

The Grand Jury charges:

46.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 37 of this Indictment.

47.     One or about the following approximate dates, in the District of Massachusetts and elsewhere, the defendants,

(1) MANPREET KOHLI, a/k/a/ "Mkay Saitama" or "mannythehitman",
(2) NAM TRAN, a/k/a "Ntran1234", and
(3) HAROON MOHSINI, a/k/a "AaronSaitama" or "Elonmansur",

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Charged Defendant | Approximate Date | Description |
|-------|-------------------|------------------|-------------|
| 5 | (3) HAROON MOHSINI, a/k/a "AaronSaitama" or "Elonmansur" | July 3, 2021 | Electronic message from MOHSINI, located outside Massachusetts, to Hernandez, located inside Massachusetts, and to others, stating: "Pump it up". |
| 6 | (2) NAM TRAN, a/k/a "Ntran1234" | October 25, 2021 | Electronic message from TRAN, located outside Massachusetts, to Hernandez, located inside Massachusetts, and to others, stating: "HODL and you will never regret!" |

| 7 | (1) MANPREET KOHLI, a/k/a/ "Mkay Saitama" or "mannythehitman" | February 14, 2022 | Electronic message from KOHLI, located outside Massachusetts, to Hernandez, located inside Massachusetts, and to others, stating: "US is easiest to get in trouble lol". |
|---|---|---|---|

All in violation of Title 18, United State Code, Section 1343.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

48.     Upon conviction of one of more of the offenses in violation of Title 18, United States Code, Section 371, relating to conspiracy to commit wire fraud and market manipulation, Title 18, United States Code, Section 1343, relating to wire fraud, and Title 15, United States Code, Sections 78i(a)(2) and 78ff(a), relating to market manipulation, as set forth in Counts One through Nine, the defendants,

> (1) MANPREET KOHLI, a/k/a/ "Mkay Saitama" or "mannythehitman",
> (2) NAM TRAN, a/k/a "Ntran1234", and
> (3) HAROON MOHSINI, a/k/a "AaronSaitama" or "Elonmansur",

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

49.     If any of the property described in Paragraph 48, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants –

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with, a third party;
>
> c.  has been placed beyond the jurisdiction of the Court;
>
> d.  has been substantially diminished in value; or
>
> e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 48 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

<u>UNLICENSED MONEY TRANSMITTING BUSINESS FORFEITURE ALLEGATION</u>
(18 U.S.C. § 982(a)(1))

50.     Upon conviction of the offense in violation of Title 18, United States Code, Section

371, relating to conspiracy to conduct an unlicensed money transmitting business, set forth in

Count One, the defendants,

> (1) MANPREET KOHLI, a/k/a/ "Mkay Saitama" or "mannythehitman",
> (2) NAM TRAN, a/k/a "Ntran1234", and
> (3) HAROON MOHSINI, a/k/a "AaronSaitama" or "Elonmansur",

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any

property, real or personal, involved in such offense, and any property traceable to such property.

51.     If any of the property described in Paragraph 50, above, as being forfeitable

pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of

the defendants

> a.   cannot be located upon the exercise of due diligence;
>
> b.   has been transferred or sold to, or deposited with, a third party;
>
> c.   has been placed beyond the jurisdiction of the Court;
>
> d.   has been substantially diminished in value; or
>
> e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property described in Paragraph 50 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

FOREPERSON

CHRISTOPHER J. MARKHAM
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: ~~July~~ June 27, 2024
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK    4:14pm