**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | **No. 1:24-cr-10189-AK** |
| | § | |
| **v.** | § | |
| | § | |
| **MANPREET KOHLI, et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**<u>REPLY MEMORANDUM OF LAW IN RESPONSE TO THE GOVERNMENT'S PRELIMINARY OPPOSITION TO DEFENDANT KOHLI'S MOTION TO DISMISS THE INDICTMENT (LEAVE TO FILE GRANTED 12/23/2025)</u>**

Eric S. Rosen
DYNAMIS LLP
175 Federal Street
Suite 1200
Boston, MA 02110
(646) 541-8484
erosen@dynamisllp.com

*Attorney for Plaintiff*

Mr. Kohli moved to dismiss the Indictment on November 7, 2025. The Government has not yet responded to the merits of the motion, instead choosing to file a "preliminary" opposition to Mr. Kohli's motion to dismiss at Doc. No. 59 ("Opp." or "Opposition"), which asks this Court to deny Mr. Kohli his day in Court solely because he is an alleged "fugitive." For the reasons below, the Government's arguments must be rejected.

## I. THE GOVERNMENT'S SUGGESTION THAT THIS COURT HOLD MR. KOHLI'S MOTION IN "ABEYANCE" IS UNWORKABLE GIVEN THAT HIS CO-DEFENDANT HAS NOW JOINED IN THE MOTION.

The Government first suggests that this motion should be denied or held in abeyance pending Mr. Kohli's arrival in the United States. Opp. at 1. But this suggestion makes little sense. Mr. Mohsini, Mr. Kohli's co-defendant, has now joined in the motion to dismiss. Practically speaking, the motion will be heard whether the Government likes it or not, as the Government concedes that Mr. Mohsini is entitled to have his motion—which encompasses the very arguments made by Mr. Kohli—resolved by this Court.

What the Government is effectively asking this Court to do is, at best, hear the same motion twice. This is unworkable for many reasons. *First*, and most importantly, if the Court rules on Mr. Mohsini's motion and dismisses the Indictment (or counts within it), that ruling will also necessarily mean that the Indictment is insufficient as to Mr. Kohli. Yet the Government, by attempting to deprive Mr. Kohli of access to this Court, is now asking this Court to *potentially* sustain a legally defective indictment against Mr. Kohli solely because he is in the UK, while simultaneously dismissing that same indictment (or charges within) against Mr. Mohsini. This invites a scenario whereby the United States could continue to seek extradition for charges this very Court has already deemed insufficient. In addition to be unjust, this wastes the resources of this Court, the UK Courts, and the U.S. State Department.

If the Indictment is *not* dismissed as to Mr. Mohsini, that ruling will not bind Mr. Kohli, as he would not have had a full opportunity to be heard, and therefore would not be bound by this Court's decision. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979) (collateral estoppel and res judicata apply only where there are the same parties or parties in privity). The Government's opposition, which dedicates only a footnote to this issue in a 12-page brief (fn. 1), fails to consider potential inconsistent rulings between Mr. Mohsini and Mr. Kohli. These two defendants are still joined for trial—no motion for severance has been made or granted—and the Court could, in effect, deny Mr. Mohsini's motion while, a year later, based on either different arguments made or a change in the ever-evolving law of crypto, grant Mr. Kohli's motion.[1] Additionally, Mr. Kohli, by having his motion argued by another defendant and considered by the Court in his absence, would effectively be tried *in absentia*, in violation of federal law. *See Crosby v. United States*, 506 U.S. 255 (1993); Fed. R. Crim. Pro. 43(c).

It is unclear how all these different issues would be handled, and the Government provides no suggestions. What the Government is doing, by insisting that the motion go forward for Mr. Mohsini—while depriving Mr. Kohli of his own opportunity to argue it—is creating a hornets'

---

[1] The Government suggests that Mr. Kohli's case is "effectively stayed," citing provisions of the Speedy Trial Act. Opp. at 3. The Government, however, has it backwards. Not only is Mr. Kohli's case proceeding (his extradition hearing initiated by the United States is in January), but when there are multiple defendants joined in an Indictment, such as the case here, the Speedy Trial Act does not run for any defendant "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. §3161(h)(6). This is true even when one defendant is an alleged "fugitive." *See United States v. Del. La. Cruz Del. Aza*, 485 F. Supp. 2d 11 (D. P.R. 2007). Thus, the Speedy Trial Act for Mr. Mohsini has not yet begun to run because he is still joined for trial with Mr. Kohli and no motion for severance has been granted.

nest of issues for appellate review, which is not in the interest of any party or the Court. For this reason alone, the Government's Opposition must be rejected.

## II. MR. KOHLI, WHO IS UNDER THE UNITED STATES CONTROL IN THE UNITED KINGDOM, IS *NOT* A FUGITIVE SUBJECT TO DISENTITLEMENT.

The Government's argument hinges on the notion that Mr. Kohli is a fugitive from justice. The Government contends that a defendant cannot move to dismiss if he "refuses to show up to answer an indictment" or "ignores an arrest warrant." Opp. at 4; *see also* Opp. at 10 (Kohli has "refused to surrender himself to the jurisdiction of the court").

In support of this argument, the Government cites *United States v. Shalhoub*, 855 F.3d 1255 (11th Cir. 2017) for the proposition that when a defendant "refused to surrender himself to the jurisdiction of the court, electing instead not to travel outside of Saudi Arabia to avoid apprehension," he should not be entitled to "challenge the indictment." Opp. at 5. Likewise, the Government cites cases such as *In re Kashamu*, 769 F.3d 490 (7th Cir. 2014) and *United States v. Martirossian*, 917 F.3d 883 (6th Cir. 2019) for the proposition that Mr. Kohli need only purchase a plane ticket and appear in the District of Massachusetts to avail himself of this Court. *See* Opp. at 6-7 (stating that *Kashamu* "has only to fly form Lagos to Chicago; there are loads of reasonably priced flights" and defendant *Martirossian* has a "readily available means of obtaining a ruling on his motion to dismiss the indictment. He can show up in the Southern District of Ohio, and the court as promised will decide his motion.").

But as the Government knows, that is not the situation here. Upon Indictment, Mr. Kohli was arrested in the United Kingdom based on the warrant issued by this Court. The U.S. Government hired counsel, who fought for Mr. Kohli to be detained pre-trial. All of Mr. Kohli's computers were seized. And although Mr. Kohli was granted bail, there is now a Court case in

the United Kingdom entitled "*United States of America v. Manpreet Singh Kohli*." *See* Ex. A [High Court order]. The bond order entered by the UK case makes clear that Mr. Kohli cannot just travel to the United States. The order commands Mr. Kohli to reside at his home in Windlesham, UK. Mr. Kohli must report to the police every Monday, Wednesday and Friday. He is subject to a curfew of 1:00 AM to 5:00 AM, and he wears an ankle monitor. Mr. Kohli's passport has been seized, and the passports of his wife and children have also been seized. Mr. Kohli's work permits for Kenya and the UAE have been "surrendered." Mr. Kohli is prohibited from visiting "any international travel hub," which includes all airports in the UK. He must also not "be in possession of or apply for any international travel documents," such as a passport, and he had to pay a £200,000 bond to secure his release.

In short, the Government's argument depends on the notion that Mr. Kohli is a fugitive because he can simply fly to the United States and fight his case upon arrival. But he cannot do that. The United States has seized his passport and travel papers, and he is confined to his home. He cannot even go to the airport, lest he be arrested. This is not mentioned in the Government's Opposition, but it is outcome determinative here. Mr. Kohli is being subjected to a Catch-22 that would make Joseph Heller blush. He cannot fight his case until he arrives in the United States, but he cannot travel to the United States because his bond conditions prevent him from even going to the airport. This absurd, counter-intuitive result, whereby Mr. Kohli is under the custody and control of the United States but cannot challenge the United States, must be rejected as inconsistent with the Rule of Law and due process.[2]

---

[2] To the extent that the Government argues that Mr. Kohli has engaged in "flight" because he is exercising his rights under the US-UK Extradition Treaty to challenge extradition, that argument must be rejected. If fighting extradition makes one a fugitive, then the UK-US Extradition Treaty is rendered a nullity. Mr. Kohli is not "avoiding" jurisdiction; he is engaging with the legal

Unsurprisingly, the Government's position that Mr. Kohli is a "fugitive" finds no support in any relevant statute. 28 U.SC. §2466, which is the "fugitive disentitlement" statute for purposes of civil forfeiture statutes, provides that a fugitive is someone who, after knowing of the issuance of legal process, either purposely leaves the United States, declines to enter or reenter the United States to submit to its jurisdiction, or "otherwise evades the jurisdiction of the court in which a criminal case is pending." None of those definitions apply here. Mr. Kohli is prohibited from traveling to the United States and he has submitted to the U.S.'s jurisdiction by participating in the UK legal process that the U.S. initiated. Likewise, 18 U.S.C. § 1073 defines a fugitive as someone who travels in interstate or foreign commerce "to avoid prosecution." To be a "fugitive" there must be an intent to travel to "avoid prosecution." Here, there is none. Mr. Kohli has not traveled anywhere to avoid prosecution, and he cannot voluntarily travel to the United States to face the charges.

Not only does the Government's argument make little sense, but none of the case law cited by the Government holds that an individual effectively detained within the United Kingdom and forbidden from even visiting an airport to travel to the United States, is a "fugitive" that can be disentitled. In *Shalhoub*, the defendant was indicted in 1997 and never arrested. 855 F.3d at 1258-59. He was living in Saudi Arabia. 18 years later the defendant moved to dismiss the Indictment. The Circuit Court, in upholding the decision of the District Court finding that the defendant was subject to fugitive disentitlement, pointed out that the defendant could simply choose to return to the United States and he had "refused to surrender himself to the jurisdiction of the court." *Id*. at. 1263-64. Here, of course, Mr. Kohli is under the direct

---

process established by treaty between the two nations in full compliance with the legal process the United States initiated.

control of the United States under the legal process initiated by the United States. This prohibits him from voluntarily traveling to the United States to face charges. Similarly in *Martirossian*, the defendant, an Armenian citizen living in China, was not under the control of the U.S. Government. Nothing suggests he had ever been arrested. Notably, the *Martirossian* court explained that the "fugitive disentitlement doctrine applies to actual flight and constructive flight, in other words (1) to defendants who leave the country before or after an indictment to evade justice or (2) to defendants who refuse to answer an indictment or arrest warrant after they issue." 917 F.3d at 890.

Neither of those situations applies here—Mr. Kohli did not flee the United States and he has been (and still is) under the control of a United States arrest warrant.[3] Put differently, the fugitive disentitlement doctrine, either as part of actual flight or constructive flight, requires a finding that the defendant voluntarily chooses not to travel to or return to the United States. The Government concedes this, as their cases involve a defendant who could travel to the United States but chooses not to do so. Here, the U.S. Government is keeping Mr. Kohli in the United Kingdom and preventing him from traveling to the United States unless he were to forgo his legal rights under the US-UK Treaty and waive extradition.

The Seventh Circuit, which authored the *Bokhari* and *In re Kashamu* decisions cited by the Government, has recognized the distinction between people like Mr. Kohli, who have

[3] The Government does not cite cases that have the same circumstances as those here. In *United States v. Bokhari*, 757 F.3d 664 (7th Cir. 2014), another case the Government heavily relies upon, the defendant's home country, Pakistan, had already rejected U.S. extradition attempts, leaving Bokhari free to roam his country at will and travel to where he pleased (subject to any Interpol notice). Critically, even though the defendant was also a U.S. citizen, the Bokhari court refused to deem him a fugitive, instead opining that "identifying fugitives for purposes of the disentitlement doctrine can present complicated legal and factual questions. As the United States has explained, the term "fugitive" may take on subtly different meanings as it is used in a variety of legal contexts." *Id*. at 672.

surrendered themselves to the authority of the country in which they are in, and those "fugitives" in *Bokhari* and *In re Kashamu*, who have the ability at any time to come to the United States to challenge their indictments. *See In re Hijazi*, 589 F.3d 401 (7th Cir. 2009) (granting writ of mandamus and rejecting application of fugitive disentitlement doctrine to individual indicted while living in Kuwait, his own country, and who surrendered himself to Kuwaiti authorities, who then declined to turn him over to the United States).

For these reasons, Mr. Kohli is not a fugitive, either constructively or otherwise, and therefore, he is not subject to the fugitive disentitlement doctrine.[4] *See Degen v. United States*, 517 U.S. 820, 828 (1996) (outside the core fugitive disentitlement context, the Supreme Court has suggested that disentitlement is "too blunt an instrument" to redress the defendant's absence).

## III. <u>THE GOVERNMENT HAS NOT ADEQUATELY DEMONSTRATED THAT MR. KOHLI COMMITTED ANY CRIMINAL ACTIVITY WHILE IN THE UNITED STATES.</u>

The Government concedes that Mr. Kohli did not flee from the United States once the Indictment was unsealed. Thus, the only theory establishing that he could be a fugitive is if the Government offers evidence to show that Mr. Kohli is a "constructive-flight" fugitive per the Second Circuit's recent decision in *United States v. Bardakova*, 145 F.4th 231 (2d Cir. 2025). To make this argument, the Government now suggests that Mr. Kohli engaged in criminal conduct himself while in the United States. Opp. at 8-10. The Government's unsupported assertions,

[4] Ironically, while claiming that Mr. Kohli has "refused to surrender himself to the jurisdiction of the court," the same prosecutor refuses to discuss any potential bond conditions for Mr. Kohli for when (or if) he does arrive in the United States. It is difficult to comprehend the logic of complaining about someone's lack of presence before this Court while at the same time refusing to negotiate the very conditions that would be imposed at the time of that person's initial appearance.

which find no support in the Amended Indictment, must be rejected. *See, e.g.,* Doc. No. 10 ("At all times relevant to this Superseding Indictment" …. Kohli "was a resident of the United Kingdom.").

To begin, the *Bardakova* court defines a constructive-flight fugitive as a person who 1) "allegedly committed crimes *while in the United States* but 2) who was outside the country—for whatever reason—when she learned that her arrest was sought and, 3) who then refused to return to the United Stats in order to avoid prosecution." *Id.* at 242. Of course, this only applies to individuals who have "refused to return to the United States to avoid prosecution." As described above, Mr. Kohli, who is exercising his rights under the US-UK Extradition Treaty, does not fall into that category and therefore the Government's reliance on *Bardakova* can be rejected for this reason alone.

Regardless, *Bardakova* only concerns individuals who committed crimes "while in the United States." In *Bardakova*, the defendant visited the United States at length as part of a conspiracy with a Russian oligarch to avoid sanctions, and while there, lied to the FBI. Her actual crimes were committed in the United States, her presence in the United States was central to the charged crimes (such as lying to the FBI), and she was arrested four months after those crimes were committed. *See Bardakova*, 145 F.4th at 239.

Here, in contrast, there are no allegations in the Indictment (or in the lengthy SEC complaint) alleging that Mr. Kohli traveled to the United States, let alone that he committed crimes while in the United States. Instead, the Government attempts to constructively amend the Indictment through an unsupported hearsay declaration attached to a procedural opposition. *See* Doc. No. 59-1 at 2-3. The Indictment alleges Mr. Kohli resided in the UK. The Government cannot now invent a "nexus" to the United States via an affidavit to escape the holding of *United*

*States v. Bescond*, 24 F.4th 759 (2d Cir. 2021) and its progeny. The Declaration also asserts bare legal conclusions (*i.e.* "sold tokens" or promoted Saitama "in furtherance of the charged conspiracy") without providing any transactional evidence. *Id.* Did Mr. Kohli execute a trade on a server in Virginia while sitting in Texas or California? Or did he simply exist in Texas while an automated algorithm ran?[5] The Government asks the Court to assume the former to strip Mr. Kohli of his rights. The two brief and uncorroborated and sentences in the prosecutor's declaration, concerning two trips undertaken by Mr. Kohli, none of which were central to the commission of the crime, are insufficient. *See* Doc. No. 59-1.

More is needed. The prosecutor could have, at the very least, attached to his declaration (or even to the Opposition) exhibits documenting these trips to the United States for criminal activity, but he does not. Simply alleging that someone, three years prior to their Indictment, was promoting Saitama, an activity which—without false statements—is not a crime, is not enough. *Bardakova* itself, where the defendant entered the U.S. to facilitate the scheme and whose presence was an essential element of the offense, makes that clear. Unlike the defendant in *Bardakova*, who came to the U.S. to commit specific criminal acts (lying to the FBI) and then fled, Mr. Kohli lived in the UK, worked in the UK, and (allegedly) participated in a conspiracy from the UK. Two alleged business trips three years before indictment do not convert a foreign resident into a fugitive. If the Government's theory holds, any foreign executive who has ever attended a conference in the U.S. is stripped of the right to challenge an indictment from abroad. This case is *Bescond*, not *Bardakova*.

---

[5] The allegation that Mr. Kohli sold Saitama Tokens during his trips to the United States is a legal conclusion masquerading as a fact. Did he press a button on his phone? That is not conduct "in the U.S." in the same way that lying to an agent is or physically handing over cash. Moreover, even if true, and the prosecutor has presented no evidence showing that these sales were unlawful, as not every purchase or sale of Saitama was criminal.

Put differently, it is not the actual travel to the United States that is important, it is the engagement of criminal activity *while in the United States* that establishes the "constructive-flight" fugitive doctrine. *See Bardakova*, 145 F.4th a 242 (*citing United States v. Cornelson*, 595 F. Supp. 3d 265, 270–71 (S.D.N.Y. 2022) ("holding that a Brazilian citizen living in Brazil was not a constructive-flight fugitive because, even though he owned property and regularly spent time in the United States, none of his alleged criminal conduct occurred in the United States")). Beyond the two conclusory sentences proffered by the prosecutor, no evidence of criminal activity in the United States has been presented.

Rather, the facts here are almost entirely identical to *Bescond*, 24 F.4th at 759, the primary case that the Government fails to distinguish. The Government argues that, unlike with *Bescond*, Mr. Kohli did not "merely stay at home." Opp. at 10. Yet the Government then cites a number of allegations—promoting Saitama, banking, dissolving an LLC—where Mr. Kohli *did* entirely "stay at home" in the UK. Opp. at 10. To be clear, the defense disagrees completely with the prosecutor's version of events, and an evidentiary hearing will be needed should the prosecutor insist on labeling Mr. Kohli a fugitive based on unsupported accusations. But even accepting the prosecutor's version of events, the prosecutor does not dispute that exchanging messages with others, promoting Saitama, and dissolving Saitama LLC, all occurred while Mr. Kohli was physically overseas.

## IV. DISENTITLEMENT HERE WOULD NOT SERVE THE PURPOSES OF THE FUGITIVE DISENTITLEMENT DOCTRINE.

Disentitlement serves four purposes, "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4)

avoiding prejudice to the other side caused by the defendant's escape." *See Bescond*, 24 F.4th at 773-74.

None of these factors support disentitlement. Mr. Kohli is already undergoing extradition proceedings in the United Kingdom. If Mr. Kohli wins this motion, the extradition proceedings will stop; if he loses, they will continue. Either way, this Court's decision will be enforced. In addition, Mr. Kohli has not flouted the judicial process or fled from justice. Rather, he was arrested in the U.K. and he is participating in the legal process initiated by the U.S. Further, because Mr. Mohsini has adopted portions of this motion, it will be highly *inefficient* to prevent Mr. Kohli from arguing the motion too, as described above. Finally, the Government has not, in its motion, articulated any prejudice it suffers from having Mr. Kohli argue his motion. That is because there is none. The Government does not want the motion to be argued because it is legally and factually correct.

## V. CONCLUSION

For all these reasons, Kohli respectfully requests that this Court allow Mr. Kohli, a resident of the United Kingdom "at all relevant times," challenge the Government's case against him. He is not a fugitive. He has fully complied with the legal process initiated by the United States, and as such, it would be unjust (and inefficient) to prevent him from moving to dismiss the Indictment.

Dated: November 24, 2025

Respectfully submitted,

*/s/ Eric S. Rosen*

Eric S. Rosen
DYNAMIS LLP
175 Federal Street, Suite 1200
Boston, MA 02110
(646) 541-8484
erosen@dynamisllp.com

# Ex. A

HIGH COURT OF JUSTICE
17 Oct 2024
LONDON
ADMINISTRATIVE COURT

AC-2024-LON-003356

**THIS ORDER SUPERSEDES THE ORDER SEALED ON 16 OCTOBER 2024**

**IN THE HIGH COURT OF JUSTICE**
**KING'S BENCH DIVISION**
**ADMINISTRATIVE COURT**
**BEFORE THE HONOURABLE MR JUSTICE CHAMBERLAIN**

**In the matter of an appeal against the grant of bail pursuant to s. 1(1A) of the Bail (Amendment) Act 1993**

**UNITED STATES OF AMERICA** **Appellant**

**- v -**

**MANPREET SINGH KOHLI** **Respondent**

---

**ORDER**

---

**UPON** the Appellant's appeal against the grant of bail pursuant to s1(1A) of the Bail (Amendment) Act 1993;

**UPON** hearing Camila Ferraro, counsel for the Appellant and Louisa Collins, counsel for the Respondent;

**IT IS HEREBY ORDERED as follows:**

1 The appeal against the grant of bail is dismissed.

2 The Respondent is admitted to bail subject to the following conditions:

(a) The Respondent must reside at 3 Pine Grove, Windlesham, GU20 6AW.

(b) The Respondent must report to Woking Police Station on Monday, Wednesday and Friday between 18:00 and 20:00.

(c) The Respondent must abide by an electronic curfew between 01:00 and 05:00.

(d) Within 24 hours of release, the Respondent is to obtain a mobile phone and provide the number to the Court. This must be kept switched on, charged, and with him at all times.

(e) Before the Respondent is released, his residence permit for Kenya and work permit for the UAE must be surrendered.

(f) Before the Respondent is released, the passport of his wife, Tanika Kohli, and the passports of his children, Hridaan Kohli and Kiana Kohli, must be surrendered.

(g) The Respondent must not be in possession of or apply for any international travel documents.

(h) The Respondent must not attend any international travel hub.

(i) The Respondent must not at any time and by any means contact any of the co-defendants.

(j) Before the Respondent is released, a £200,000 security must be lodged with Court.

3 The Appellant must pay the Respondent's reasonable costs, to be assessed if not agreed.

Dated 16 October 2024

BY THE COURT